IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FREEDOM BEY,** | ) |
| | ) |
| Plaintiff | ) |
| v. | ) Civil No. 24-702 |
| **TERRY HEDIGER A.C.P., ROBERT KEENAN A.C.P., PATRICK KINAVEY(A.C.P.), SCOTT TOWNE (A.C.P.), and LISA M. PELLEGRINI,** | ) ) ) ) ) |
| | ) |
| Defendants. | ) |

## Opinion on Motion to Dismiss

Plaintiff Freedom Bey, proceeding pro se, commenced this action on May 10, 2024, by filing a motion to proceed in forma pauperis, which the Court granted. ECF Nos. 1 & 6. Mr. Bey sues four Allegheny County Homicide Detectives (Hediger, Keenan, Kinavey, and Towne) and Assistant District Attorney Lisa M. Pellegrini (ADA Pellegrini), alleging that they violated his rights in connection with a homicide investigation and the resulting trial and guilty verdict. ECF No. 7. ADA Pellegrini has filed a Motion to Dismiss for Failure to State a Claim on December 20, 2024.[1] ECF No. 13. Mr. Bey filed his Response and Brief in Opposition on July 15, 2025. ECF Nos. 26 & 27. Thereafter, Ms. Pellegrini filed a Reply. ECF No. 28. For the reasons that follow, the Court will grant the Motion to Dismiss, in part, and dismiss this action.

I.   **Relevant Background**

A. **Plaintiff's Complaint Allegations**

In his Complaint, Mr. Bey alleges that the Defendants "engaged in misconduct which resulted in Freedom Bey (Plaintiff) being denied his 14th Amendment right to due process and 6th Amendment right to a fair trial." Compl. at 4. He states that the Defendants, acting under

---
[1] The Homicide Detective Defendants have not been served.

color of state law, "engaged in an unlawful investigation," "destroyed exculpatory evidence," "intentionally withheld exculpatory evidence, "used coercive interviews," "fabricated and tampered with evidence," "conducted improper identification process," and "presented/solicited false/perjured testimony." Compl. at 5. Mr. Bey states that events giving rise to his claim occurred at 245 E. Waterfront Drive, Homestead, Pennsylvania, 15210 (the location of an Eat'n Park restaurant) on June 28, 2008, at approximately 4:00 a.m. Compl. at 5. Finally, Mr. Bey sets forth the following general allegations:

> I, Freedom Bey, was wrongfully convicted of 1st degree murder. The aforementioned Defendant(s) working in concert engaged in deliberate deception by destroying and concealing exculpatory evidence which would have supported Plaintiff's claim of self defense. By fabricating and tampering w/ exculpatory evidence, conducting improper identification procedures, using coercive interview techniques, utilizing deliberate deception tactics, etc. engaged in misconduct and abused their authority, thus, resulting in my being wrongfully convicted of 1st degree murder."

Compl. at 5.

### B. Underlying Factual Information

Mr. Bey alludes to certain factual events underlying his claims, but he does not set forth a complete factual history. The Court, however, can provide relevant underlying information as obtained from publicly available documents, which are matters of public record subject to judicial notice and because they comprise information integral to Mr. Bey's claims. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed.2004)); *Geness v. Admin. Off. of Pennsylvania Cts.*, 974 F.3d 263, 276 (3d Cir. 2020) (taking judicial notice of the Pennsylvania Rules of Judicial Administration as "matters of public record"). Here, the Court relies upon the following documents:

2

- The docket sheet in Mr. Bey's underlying state criminal case in the Court of Common Pleas of Allegheny County, CP-02-CR-0010884-2008, among other items, confirms that, on October 11, 2017, the Court of Common Pleas of Allegheny County issued an Order granting post-conviction relief by vacating Mr. Bey's sentence and ordering a new trial.

- A Pennsylvania Superior Court Opinion, affirming Mr. Bey's 2010 judgment of guilty, following his jury trial. *Com. v. Bey*, No. 1693 WDA 2010, 2013 WL 11261865 (Pa. Super. Ct. July 12, 2013).

- A Court of Common Pleas' findings of fact and conclusions of law in support of denying Mr. Bey's Motion for Dismissal, based on Double Jeopardy grounds. *Com. v. Bey*, No. CP-02-CR-10884-2008, 2018 WL 11697249 (Pa.Com.Pl. Sep. 10, 2018).

- A Pennsylvania Superior Court Opinion, denying Mr. Bey's appeal of the lower Court's Order denying a pretrial motion to dismiss arguing that the prosecution failed to timely commence a new trial. *Commonwealth v. Bey*, 311 A.3d 592 (Pa. Super. Ct. 2023), *appeal denied*, 335 A.3d 684 (Pa. 2025).

The precipitating event underlying Plaintiff's Complaint occurred in the early morning hours of June 28, 2008, outside of an Eat'n Park located in Homestead, Pennsylvania. There, Brendan Brooks was shot and later died. Mr. Bey was identified as the shooter, though he maintains he acted in self-defense. A jury trial was held in the Allegheny County Court of Common Pleas. The case was prosecuted by ADA Pellegrini. On July 16, 2010, Mr. Bey was found guilty of first-degree murder and of carrying a firearm without a license. He was sentenced on September 29, 2010 to a term of Life imprisonment for the first-degree murder charge. An appeal was filed; and, on July 12, 2013, the Pennsylvania Superior Court affirmed the conviction.

On December 3, 2014, Mr. Bey diligently pursued his post-conviction remedies, by filing a Petition pursuant to the Post-Conviction Relief Act (PCRA). PCRA counsel was appointed to represent Mr. Bey. On January 20, 2017, then -- appointed counsel filed an Amended PCRA Petition. The Amended PCRA Petition alleged ineffective assistance of counsel, prosecutorial misconduct, and newly discovered evidence in the form of an additional Eat'n Park surveillance

video. The Amended PCRA Petition sought dismissal of all charges or a new trial. In addition, Mr. Bey's PCRA counsel sought, and obtained, the right to conduct discovery. On September 22, 2017, after discovery was completed, the Commonwealth filed its Answer to the Amended PCRA Petition, in which it conceded that Mr. Bey was entitled to a new trial, based upon the newly discovered evidence claim. On October 11, 2017, the Court of Common Pleas granted the Amended PCRA Petition, vacated the sentence, and ordered a new trial, based upon the after-discovered surveillance video.

Mr. Bey remained incarcerated while he awaited a new trial on the original charges. On January 16, 2018, in a pre-trial motion, citing prosecutorial misconduct, Mr. Bey requested dismissal of the charges, based upon double jeopardy grounds. After an evidentiary hearing, the trial court denied the motion. *Com. v. Bey*, No. CP-02-CR-10884-2008, 2018 WL 11697249 (Pa. Com. Pl. Sep. 10, 2018) (finding no evidence of bad faith by the prosecutor, no evidence of intentional conduct to deprive defendant of a fair trial, and no evidence of deliberate misconduct during closing argument, among other findings). Mr. Bey filed an interlocutory appeal; and, on January 24, 2020, the Pennsylvania Superior Court affirmed the trial court's Order denying Mr. Bey's double jeopardy claim, clearing the way for a new trial to take place. *Commonwealth v. Bey*, No. 1405 WDA 2018, 2020 WL 406380 (Pa. Super. Ct. Jan. 24, 2020). However, on May 10, 2022, Mr. Bey pleaded guilty to third-degree murder and carrying a firearm without a license. He was sentenced to a term of seven-and-a-half to fifteen years' imprisonment on the third-degree murder charge, plus two to four years on the firearm charge. *Commonwealth v. Bey*, 311 A.3d 592 (Pa. Super. Ct. 2023), *appeal denied*, 335 A.3d 684 (Pa. 2025).

### C. Claims

Mr. Bey asserts claims pursuant to 28 U.S.C. § 1983, alleging that he was denied due process and a fair trial, in violation of the Sixth and Fourteenth Amendments to the United States Constitution. The individual claims he appears to assert are, a *Brady* violation claim, alleging that Defendants fabricated evidence, destroyed evidence, withheld evidence, and tampered with evidence; a conspiracy claim, alleging that all Defendants conspired to fabricate evidence, destroy evidence, tamper with evidence, and conceal evidence; and a claim that Defendants presented (or solicited) false and/or perjured testimony. Mr. Bey also asserts a wrongful conviction claim, based upon Defendants allegedly engaging in an unlawful investigation, using improper identification procedures, using coercive interview techniques, and deliberate deception tactics. Finally, he alleges generally that all Defendants, acting in concert, engaged in misconduct and abused their authority, which resulted in his wrongful conviction for first degree murder. In his Brief, Mr. Bey expands upon his allegations by listing the items of evidence he alleges were destroyed, not preserved, and/or withheld. Pltf. Brief, ECF No. 27, at 7, 11-12. He also alleges prosecutorial misconduct in questioning witnesses and in the prosecutor's closing argument. *Id.*

## II. Standard of Review

### A. Pro se Pleadings

"Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). In reviewing pro se pleadings, the Court remains aware that "however inartfully pleaded," pro se plaintiffs must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). "This already liberal standard is 'even more pronounced' where a plaintiff files the complaint without the assistance of counsel." *Garrett v. Wexford Health*, 938

F.3d 69, 92 (3d Cir. 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982).

### D. Rule 12(b)(6)

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court clarified that this plausibility standard should not be conflated with a higher probability standard. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a prima facie case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that

discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir.2009) (quoting *Graff v. Subbiah Cardiology Associates, Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790 (3d Cir.2016). The primary question in deciding a motion to dismiss is not whether the Plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000).

If the court decides to grant a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the court must next decide whether leave to amend the complaint must be granted. The court "must permit a curative amendment unless such an amendment would be inequitable or futile." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (internal quotations omitted). Amendment is inequitable where there is "undue delay, bad faith, dilatory motive, [or] unfair prejudice." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Amendment is futile "where an amended complaint 'would fail to state a claim upon which relief could be granted.'" *M.U. v. Downingtown High Sch. E.*, 103 F. Supp. 3d 612, 631 (E.D. Pa. 2015) (quoting *Great W. Mining*, 615 F.3d at 175).

### III. Discussion

ADA Pellegrini argues for dismissal of Mr. Bey's Complaint for several reasons. First, she argues that Mr. Bey's Complaint fails to comply with Federal Rule of Civil Procedure 8(a)(2), and that he fails to sufficiently state a conspiracy claim. Second, she argues that Mr. Bey's claims must be dismissed because Mr. Bey has failed to allege a favorable termination to his conviction. Third, she argues that the applicable statute of limitations bars all claims in the

7

Complaint. Finally, she argues that she is entitled to absolute prosecutorial immunity for any conduct she is alleged to have committed.

### A. Federal Rule of Civil Procedure 8(a)(2)

ADA Pellegrini argues that the Complaint fails to adequately comply with Rule 8(a)(2). A Complaint must present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2). Mr. Bey's Complaint complies with Rule 8. Here, as evidenced by ADA Pellegrini's Brief in Support of her Motion to Dismiss, she was able to discern what claims Mr. Bey was asserting, and she was able to meaningfully respond to the claims in her brief. *See Garrett v. Wexford Health*, 938 F.3d 69, 95 (3d Cir. 2019) (defendants' "brief demonstrates that it was possible to understand and engage with [Plaintiff's] claims on their merits," such shows that the complaint "meets the pleading requirements of Rule 8"; *see also id.* at 95-96). The Court too is able to discern the constitutional claims asserted by Mr. Bey, as such alleged wrongs are detailed in the case documents that are integral to Mr. Bey's action. Finally, with respect to the conspiracy claim, Mr. Bey's allegations allow us to infer, at this stage, that Mr. Bey is alleging that ADA Pellegrini and the homicide detectives reached an agreement or understanding to engage in the conduct that deprived him of a fair trial and violated his due process rights. *Maldonado v. City of Philadelphia*, No. CV 22-3474, 2023 WL 4685967, at *1 (E.D. Pa. July 21, 2023). ADA Pellegrini's Motion to Dismiss, based on failure to comply with Rule 8(a)(2) and failure to sufficiently state a conspiracy claim, will be denied.

### B. Failure to Allege Favorable Termination Pursuant to *Heck*

ADA Pellegrini argues that Plaintiff's § 1983 claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Under the Supreme Court's holding in *Heck*, if a favorable judgment on a § 1983 damages claim would "necessarily imply the invalidity" of the plaintiff's conviction or

sentence, the claim must be dismissed, unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. *Id.* at 486–87. The Supreme Court in *Heck* explained that "invalidity" of a conviction or sentence may be shown by proof of a reversal on direct appeal, expungement by executive order, a declaration of invalidity by a state tribunal authorized to make such determination, or a federal court calling into question the validity of a conviction or sentence by issuing a writ of habeas corpus. *Id.* at 486-87.

ADA Pellegrini argues that Mr. Bey is unable to demonstrate that his guilty plea to third-degree murder has been invalidated pursuant to *Heck*. She argues that the 2017 award of a new trial does not overcome the *Heck* bar, because Mr. Bey's later guilty plea, which was based upon the same underlying conduct as his guilty verdict, is a conviction that was not favorably terminated as required by *Heck*.

ADA Pellegrini's argument invokes a single-conviction analysis of Mr. Bey's May 10, 2022 plea of guilty to third-degree murder as the end result of a single, continuous process stemming from the initial 2008 charges and the subsequently vacated 2010 guilty verdict. However, a case from the Eastern District of Pennsylvania provides persuasive support for applying a "two-conviction" analysis under *Heck*. *Dennis v. City of Phila.,* 379 F. Supp. 3d 420, 428-29 (E.D. Pa. 2019). In *Dennis*, the plaintiff's 1992 murder conviction was vacated through federal habeas relief granted by a federal district court. The decision was affirmed on appeal, with the Third Circuit directing the Commonwealth to either set Mr. Dennis free or undergo a new trial. *Id.* at 427. Instead, on December 22, 2016, Mr. Dennis accepted the Commonwealth's offer to enter a plea of no contest to third-degree murder and a sentence of "time served." *Id.* That case, like this one, involved two convictions based upon the same conduct: a vacated first-degree murder conviction, followed by a guilty plea to third-degree murder.

9

The defendants in *Dennis* argued that *Heck* barred the § 1983 action, because success on Mr. Dennis' § 1983 claim would necessarily imply the invalidity of his later no contest plea. The *Dennis* Court, however, explained that Mr. Dennis' § 1983 action was not addressing a typical "unbroken chain of events" from investigation to conviction to § 1983 action. *Id.* at 428. If it were, then *Heck* would bar the action. *Id.* Instead, Mr. Dennis' action addressed a conviction (the 1992 conviction) that had been vacated, thereby "breaking the chain of events leading up to his § 1983 claim." *Id.* The District Court thus analyzed whether *Heck* barred the § 1983 action when "there are two convictions, one of which has been invalidated (the 1992 conviction) and one of which has not (the 2016 conviction)." *Id.* The answer the Court gave was "no," *Heck* did not bar the action. *Id.* at 433.

The Court reasoned that a § 1983 action, alleging violations of the right to due process and a fair trial, "only bears on the conviction in which the violations occurred and not on a subsequent conviction, even if based on the same general underlying conduct of the plaintiff." *Id.* at 431. Further, the *Dennis* Court explained that such § 1983 actions do not bear "upon an individual's ultimate guilt or innocence." *Id.* at 430. Such procedural constitutional violations "thwart the basic purposes of due process and work to deny an individual a fair trial," even if the individual is ultimately guilty, because "even the guilty are entitled to due process and a fair trial." *Id.* at 430. "In other words, if a plaintiff brings a § 1983 claim that does not depend upon his ultimate guilt or innocence of the underlying conviction, it does not matter even if after the first criminal conviction is vacated, he is convicted a second time for the same conduct." *Id.* As stated by the *Dennis* Court, a subsequent conviction, based upon the same underlying conduct, "could not possibly replicate" the constitutional violations associated with the first, vacated, conviction. *Id.* at 429. The *Dennis* Court thus concluded that, "success on Mr. Dennis's § 1983

10

action would only undermine the validity of his 1992 conviction, where the alleged Fourteenth Amendment violations occurred;" but, because the 1992 conviction "was vacated by a federal writ of habeas corpus . . . , *Heck* does not bar this action" *Id.* at 430.[2]

At the time of the 2019 *Dennis* decision, the Third Circuit had not addressed a two-conviction § 1983 action pursuant to *Heck* (and the Circuit has not addressed the issue in the interim). Therefore, the *Dennis* Court looked to the few other courts that had addressed the issue, summarizing the cases as follows:

> Sister circuits and district courts have held that, in certain circumstances, a plaintiff may bring a § 1983 claim for *Miranda* violations and *Brady* violations related to a conviction that had been vacated or called into question, notwithstanding the existence of a subsequent guilty plea or conviction based on the same general underlying conduct of the plaintiff.

*Id.* at 429 (citing *Jackson v. Barnes*, 749 F.3d 755, 758 (9th Cir. 2014); *Poventud v. City of New York*, 750 F.3d 121, 124-25 (2d Cir. 2014) (*en banc*); *Smith v. Gonzales*, 222 F.3d 1220, 1222 (10th Cir. 2000); *Munchinski v. Solomon*, 2:13cv1280, 2014 WL 11474847, at *5 (W.D. Pa. Sept. 15, 2014), *rev'd on other grounds*, 618 F. App'x 150 (3d Cir. 2015)). In *Jackson*, after receiving habeas relief from his initial first-degree murder conviction, plaintiff was retried, and again convicted of first-degree murder. *Jackson*, 749 F.3d at 758. In *Jackson*, the Ninth Circuit concluded that *Heck* did not bar his § 1983 action aimed at his first conviction, explaining that, "the second conviction was a 'clean conviction' and 'entirely insulated from the … violation associated with his initial conviction.'" *Dennis* at 430 (quoting *Jackson*, 749 F.3d at 761).

In *Poventud*, the plaintiff had been convicted in 1998 of attempted murder. *Poventud*, 750 F.3d at 124. Mr. Poventud successfully won his state collateral challenge, and his conviction was

---

[2] The *Dennis* decision was resolved on Defendants' Motion to Dismiss. The Defendants raised the same *Heck* argument after discovery, at the Motion for Summary Judgment stage, which was again denied for similar reasons, by a different District Judge. *Dennis v. City of Philadelphia*, No. CV 18-2689, 2023 WL 7174221, at *2 (E.D. Pa. Oct. 30, 2023)

11

vacated by the state court, based upon *Brady* violations. *Id.* In 2006, Mr. Poventud pleaded guilty to a lesser charge based upon the same underlying conduct. *Id.* In this two-conviction case, the Second Circuit, sitting *en banc*, explained that *Brady* violations that result in a new trial award, "necessarily imply the invalidity of the challenged conviction in the trial (or plea) in which the *Brady* violation occurred." *Id.* at 132. "That should come as no surprise; the remedy for *Brady* violation is vacatur of the judgment of conviction and a new trial in which the defendant now has the *Brady* material available to her." *Id.* at 133. For example, an award of a new trial based upon a constitutional violation, such as introducing false testimony during the first trial, cannot possibly be replicated, or otherwise affect a second trial because the *Brady* or other procedureal constitutional violation has been made known to all parties. *Id.* at 134.

After the *Dennis* decision was issued, two District Courts in the Eastern District also concluded that *Heck* did not bar similar § 1983 "two-conviction" cases. *Maldonado,* No. CV 22-3474, 2023 WL 4685967 and *Gladden v. City of Philadelphia*, No. CV 21-4986, 2022 WL 605445 (E.D. Pa. Feb. 28, 2022). In *Maldonado*, the Court concluded that Mr. Maldonado's § 1983 Fourteenth Amendment claim, "challenges the evidence underpinning his first conviction, but the first conviction satisfies the 'favorable termination" rule because it is already vacated," and thus the action was not barred by *Heck*. *Maldonado* No. CV 22-3474, 2023 WL 4685967, at *6. In *Gladden*, the Court relied upon the analysis in *Dennis*, explaining as follows:

> Mr. Gladden alleges the Detectives fabricated evidence and deliberately deceived counsel and the court by concealing and suppressing relevant and material evidence depriving him of his liberty without due process and a fair trial. His claim for fabrication of evidence and deliberate deception undermines his original conviction. But the state court invalidated his original conviction when it granted his amended Post Conviction Relief Petition, overturning his conviction and ordering a new trial. Mr. Gladden's subsequent conviction is a "clean conviction" and "entirely insulated" from the previous violations because he knew of them when he pleaded no contest to third-degree murder, which has the same legal

> effect as a guilty plea, and he still accepted the plea. Mr. Gladden's civil rights claim "only bears on the conviction in which the violation occurred"—*i.e.*, his 1999 conviction for felony murder, robbery, and criminal conspiracy—and are not barred by *Heck*.

*Gladden*, No. CV 21-4986, 2022 WL 605445, at *5. (Internal footnotes omitted).

Applying the analysis to Mr. Bey's case similarly demonstrates that success on Mr. Bey's § 1983 action would only undermine the validity of his 2010 conviction after trial, "[b]ut the state court invalidated his original conviction when it granted his amended Post Conviction Relief Petition, overturning his conviction and ordering a new trial." *Id.* Mr. Bey's "subsequent [guilty plea] conviction is a 'clean conviction' and 'entirely insulated' from the previous violations because he knew of them when he pleaded [guilty] to third-degree murder." *Id.* Therefore, Mr. Bey has successfully surmounted the *Heck* bar as to his first 2010 conviction, and he may proceed with his § 1983 action.[3]

### C. Statute of Limitations Bar

Although Mr. Bey's action survives the *Heck* bar, his Complaint is barred by the applicable statute of limitations. A § 1983 action, arising in Pennsylvania, is subject to a two-year statute of limitations period pursuant to 42 Pa. Cons. Stat. § 5524. *Lake v. Arnold*, 232 F.3d 360, 368 (3rd Cir. 2000); *Kost v. Kozakiewicz*, 1 F.3d 176, 189–90 (3d Cir.1993). The limitations period for a § 1983 action begins to run from the time "the plaintiff knew or should have known of the injury upon which [his] action is based." *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). A "§ 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been

---

[3] As to his second conviction, Mr. Bey cannot overcome the *Heck* bar, as that conviction has not been favorably terminated. To the extent any of his § 1983 claims challenge the second conviction, or depend upon a claim that he is innocent, such claims are barred by *Heck*.

invalidated." *Heck*, 512 U.S. at 489-490. Mr. Bey's 2010 first-degree murder conviction was invalidated on October 11, 2017, when the Court of Common Pleas granted Mr. Bey's Amended PCRA Petition and ordered a new trial. Thus, Mr. Bey's claim accrued on October 11, 2017. The Order was not stayed and neither party appealed the Order. Therefore, the two-year statute of limitations clock began to run on October 11, 2017.

### 1. Tolling

Mr. Bey argues that the accrual date is tolled from 2018 through 2022 because he was litigating his double jeopardy issue as to his new trial in state court. He argues that the issues he "sought to raise in § 1983 civil suit were inextricably intertwined with issues and grounds raised in [the] double jeopardy motion." Pltf. Obj. to Mot. Dismiss at 3. He also asserts that, while pursuing double jeopardy relief, he was forbidden from seeking § 1983 relief by *Heck*.

#### a. Double Jeopardy Litigation

Mr. Bey's double jeopardy litigation was a challenge to the Commonwealth's ability to subject him to a second trial. While the issues and grounds raised in that litigation overlap with the issues in the present § 1983 action, they are separate and distinct matters. His pursuit of dismissal of the charges against him, based upon double jeopardy grounds, does not affect his ability to have timely initiated a § 1983 suit based upon his vacated 2010 conviction. Specifically, a § 1983 action as to the vacated conviction would "not have any bearing on " Mr. Bey's double jeopardy litigation, regardless of the outcome of such litigation. *Jackson*, 749 at 760. Further, no matter the outcome of the double jeopardy litigation, it would not have affected Mr. Bey's ability to timely pursue his present 1983 action as soon as it accrued in October 2017. Mr. Bey is correct that, prior to completion of his double jeopardy litigation, *Heck* would have barred a § 1983 suit that challenged his *second conviction*, as there had yet to be a second

14

conviction, much less one that was favorably terminated. The first conviction, however, was complete and terminated in Mr. Bey's favor on October 11, 2017. Thus, the double jeopardy litigation does not toll the statute of limitations.

In similar two-conviction *Heck* cases, courts have not tolled the limitations period due to the plaintiff pursuing his rights in connection to the "second-conviction" charges. For example, in *Dennis*, the court found that the statute of limitations period began on the date the district court granted habeas relief. *Dennis*, 379 F. Supp. 3d at 433. In that case, the statute of limitations was tolled due to a stay of the order and an appeal to the Third Circuit. *Id.* The clock started again when the Third Circuit issued its mandate, "affirming the district court's order granting Mr. Dennis habeas relief and reinstating the vacatur." *Id.* In *Munchinski*, the court found that the plaintiff's § 1983 action accrued when habeas relief was ordered, but the limitations period was tolled when the court stayed the order to permit an appeal. *Munchinski*, No. 2:13CV1280, 2014 WL 11474847, at *6. The statute remained tolled until the Third Circuit affirmed the court's grant of habeas relief. *Id.* For statute of limitations tolling analyses, neither Court relied upon, nor referred to, the parties' conduct associated with the legal process surrounding the "second conviction" charges.

Even if Mr. Bey were correct, that the statute of limitations period was tolled while he pursued his double jeopardy litigation, his Complaint would still have been filed out of time. As stated, the present action accrued on October 11, 2017. Mr. Bey filed his motion, seeking dismissal of the charges based upon double jeopardy grounds, on January 16, 2018. At that time. 97 days had run off the clock from October 11, 2017 to January 16, 2018. Assuming that the limitations period was tolled upon filing of the motion on January 16, 2018, then the clock would have remained stopped until January 24, 2020, when the Pennsylvania Superior Court issued its

15

Order affirming the trial court's denial of the double jeopardy motion. Thus, on January 24, 2000, the clock on the two-year limitations period would have started running again. That means, with 97 days having already run off the clock, any action must have been filed no later than 633 days after January 24, 2020, which was October 18, 2021.[4] Thus, the final date for filing a § 1983 action, assuming that the double jeopardy litigation tolled the clock, was October 18, 2021. Mr. Bey's Complaint was filed on May 10, 2024, and was untimely even if the above assumptions were applicable.

### b. Litigating "Second Conviction" Charges

Mr. Bey also asserts that his efforts litigating his "second conviction" charges should be tolled completely; that is, from the date he filed his pretrial motion on January 16, 2018, through May 10, 2022, the date he pleaded guilty. He filed the present Complaint on May 10, 2024, which is two years after May 10, 2022. However, he offers no legal argument to support his claim that he was barred from filing the present § 1983 action until after he pleaded guilty on the outstanding charges. Nevertheless, even if his argument were supported, his Complaint is still filed out of time. The limitations period ran for 97 days, between the accrual date and the filing of the double jeopardy motion. Assuming that the clock remained tolled until May 10, 2022, Mr. Bey's Complaint would have had to have been filed by February 2, 2024 (633 days after May 10, 2022). Thus, even under this assumed scenario, his Complaint still would have been untimely.

### c. Covid-19

His second reason for tolling the statute of limitations is because of the Covid-19 Pandemic. *Id.* at 4. However, the Covid-19 Pandemic could not have affected his ability to file a timely § 1983 suit by October 11, 2019, because the first cases in China were not reported until

---

[4] There are 730 days in a two-year time period. Subtracting the 97 days that had run off the clock, from 730 days, leaves 633 days left within which to file a timely complaint.

16

December 2019, and it was not until March 11, 2020 that the World Health Organization declared a Covid-19 Pandemic, which was followed by implementation of nationwide shutdowns and other measures.[5] For these reasons, the Court concludes that the statute of limitations was not tolled for Mr. Bey due to the Covid-19 pandemic.

### 2. Conclusion

Since Mr. Bey's claims accrued on October 11, 2017, he would have had to file a § 1983 complaint no later than October 11, 2019, in order to fall within the limitations period. The Complaint in this matter was not filed until May 10, 2024, well past the two-year statute of limitations. Accordingly, all claims in the Complaint must be dismissed as untimely.

### D. Absolute Prosecutorial Immunity

Finally, ADA Pellegrini argues that she is entitled to absolute prosecutorial immunity for any conduct she is alleged to have committed in her capacity as prosecutor. Prosecutors are "absolutely immune from liability under § 1983 for engaging in conduct that serves a quasi-judicial function." *Roberts v. Lau*, 90 F.4th 618, 624 (3d Cir. 2024). "To serve a quasi-judicial function, conduct must be 'intimately associated with the judicial phase of the criminal process' or an analogous judicial proceeding." *Id.* (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). However, "absolute immunity does not shield 'administrative or investigatory actions unrelated to initiating and conducting judicial proceedings.'" *Roberts*, 90 F.4th at 624 (citation omitted). The Third Circuit sets forth a two-step analysis: "First, we ascertain just what conduct forms the basis for the plaintiff's cause of action. Then, we determine what function (prosecutorial, administrative, investigative, or something else entirely) that act served." *Id.* at 625 (citations and quotations omitted). "To earn the protections of absolute immunity at the

---

5 https://www.cdc.gov/museum/timeline/covid19.html

motion-to-dismiss stage, a [prosecutor] must show that the conduct triggering absolute immunity clearly appears on the face of the complaint." *Id.* (citations omitted).

A review of the Complaint confirms that ADA Pellegrini's alleged conduct is subject to absolute prosecutorial immunity, as Mr. Bey's claims, with one exception, are clearly aimed at prosecutorial functions. The claims presented in this action are the same as the claims asserted in Mr. Bey's Amended PCRA Petition. *See Bey*, No. 1405 WDA 2018, 2020 WL 406380 at *1. "In the PCRA Petition, [Mr. Bey] sought dismissal of the charges or a new trial based on, *inter alia*, various allegations of prosecutorial misconduct and after-discovered evidence." *Id.* The same claims were also asserted in his double jeopardy motion. *See Bey*, No. CP-02-CR-10884-2008, 2018 WL 11697249, at *1. That Court stated that Mr. Bey's "allegations supporting the double jeopardy argument are identical to the issues raised in the Amended PCRA, and, in fact, appear to have been copied verbatim." *Id.* All such claims are properly dismissed based upon ADA Pellegrini's absolute prosecutorial immunity.

Mr. Bey also asserts a claim of "unlawful investigation," which may or may not be encompassed within the prosecutor's immunity. Compl. at 5. At this stage of the proceedings, the Court cannot discern if ADA Pellegini's alleged unlawful investigatory conduct describes conduct in furtherance of the prosecution or whether it describes "an investigator's work" not protected by immunity. *Roberts*, 90 F.4th at 625. That question cannot be answered based upon the face of the Complaint. All claims asserted against ADA Pellegrini, except for the unlawful investigation claim, are properly dismissed based upon absolute prosecutorial immunity.

### E. Allegheny County Homicide Detectives

The remaining Defendants, Allegheny County Homicide Detectives Terry Hediger A.C.P., Robert Keenan A.C.P., Patrick Kinavey (A.C.P.), and Scott Towne (A.S.P.), have not

been served with the Complaint. After missing the initial August 29, 2024 deadline for service of the Complaint, the Court issued a show cause Order directing Mr. Bey to complete service by October 15, 2024. ECF No. 8. On October 18, 2024, Mr. Bey sought an extension of time within which to effect service. ECF No. 9. The Court granted the Motion and extended the time for service to December 23, 2024. ECF No. 10. As of the date of this Opinion, there is no proof that service upon any of the four Detective Defendants has been completed. Thus, the four Detective Defendants are properly dismissed for Mr. Bey's failure to prosecute. In addition, dismissal of the Complaint on statute of limitations grounds applies equally to the Detective Defendants.

### IV. Conclusion

Mr. Bey's Complaint is not in violation of Rule 8(a)(2). He has also established that his Complaint overcomes the *Heck* bar by, in part, demonstrating that his first conviction has been favorably terminated. Mr. Bey cannot overcome the fact that his § 1983 action was filed well beyond the two-year statute of limitations, and therefore is subject to dismissal. Finally, ADA Pellegrini is entitled to absolute prosecutorial immunity for all claims alleged against her, except the unlawful investigation claim. It would be premature to determine based upon the face of the Complaint that ADA Pellegrini is entitled to prosecutorial immunity for said claim.

Accordingly, ADA Pellegrini's Motion to Dismiss will be denied as to her arguments that the Complaint fails to comply with Rule 8(a)(2), that the Complaint fails to state a conspiracy claim, and that the Complaint is barred by the rule in *Heck*. ADA Pellegrini's Motion to Dismiss will be granted as to her argument that the Complaint is time-barred. The Motion to Dismiss will also be granted in part and denied in part as to the argument that ADA Pellegrini is entitled to absolute prosecutorial immunity.

The four Detective Defendants will be dismissed based upon Mr. Bey's failure to prosecute, as none of the four have been served with the Complaint. Even had said Defendants been properly served, dismissal of the Complaint against them for Mr. Bey's failure to timely file the action is appropriate.

Finally, the Court determines that leave to amend will not be permitted, as such would be futile. Amendment would be futile, because any claims or amendments to the Complaint would be unable to overcome the fact that this entire case is barred by the statute of limitations.

An appropriate Order will be entered.

Dated: September 12, 2025

    s/*Marilyn J. Horan*
Marilyn J. Horan
United States District Court Judge

Freedom Bey, pro se
550 Guylyn Drive
Pittsburgh, PA 15235